# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW MOONEY )<br>)<br>        Plaintiffs, )<br>)<br>v. )<br>)<br>AXA ADVISORS, LLC, a Delaware Limited )<br>Liability Company; and AXA NETWORK, LLC, )<br>a Delaware Limited Liability Company; AXA )<br>EQUITABLE LIFE INSURANCE )<br>COMPANY, a Delaware Corporation; AXA )<br>DISTRIBUTORS, LLC, a Delaware Limited )<br>Liability Company; AXA DISTRIBUTORS )<br>INSURANCE AGENCY, LLC, a Delaware )<br>Limited Liability Company; AXA )<br>DISTRIBUTORS INSURANCE AGENCY OF )<br>MASSACHUSETTS, LLC, a Massachusetts )<br>Limited Liability Company )<br>)<br>        Defendants. ) | No.  2013 CV 3093<br>Judge Michael M. Baylson |

## AFFIDAVIT OF PHILLIP J. ZISOOK SUPPORTING
## MOTION TO COMPEL

STATE OF ILLINOIS )
                         ) SS
COUNTY OF COOK   )

Phillip J. Zisook, an attorney, certifies:

1.       I am one of the attorneys representing Plaintiff, Matthew Mooney. Mooney has moved to compel the Defendants to supplement their Answers to Interrogatories and Responses to Requests to Produce Documents, and to produce relevant documents, pursuant to Rules 33, 34 and 37 of the Federal Rules of Civil Procedure.

2.       This case concerns Mooney's claims for breaches of contracts by Defendants including, but not limited to, a Trademark License Agreement for Mooney's "SARP"

trademark.[1]  In addition, the case includes a defamation claim. (A copy of Mooney's Amended Complaint is attached hereto as Exhibit A).

3. With respect to the Trademark License Agreement, Mooney alleged, *inter alia*, that as part of the consideration, "AXA Advisors agreed to promote commission-sharing agreements with other AXA professionals who utilized the SARP trademark in marketing annuity and life insurance products, pursuant to which Mooney would be entitled to one-quarter of the 3.25% commissions earned by agents on such sales. AXA specifically approved and facilitated each such commission sharing agreement.…"  (Am. Compl. ¶ 13.)

4. AXA prepared a form to facilitate such shared commissions and distributed it to SARP Agents in conjunction with its SARP Program. (Examples of AXA's form, titled "AXA Associate Participation Agreement," are attached hereto as Group Exhibit B).  The AXA Associate Participation Agreements directed AXA to split the commissions payable to SARP agents based upon the percentages set forth in the agreements:  Mooney was to receive 25% of the commission of any "producing agent."  The shared revenue extended to any sales of AXA products through the SARP Program as well as to any life insurance or annuities sold to such clients thereafter ("within any units") which had been generated through the SARP Program (collectively, "SARP Sales"). *Id*.

5. In addition to such shared revenue, Mooney alleged that pursuant to the Trademark License Agreement AXA agreed to pay him a unique commission structure, being a percentage of assets under management on annuity contracts he sold.  (Am. Compl. ¶ 12).

6. The Complaint further alleges that "through at least May 4, 2012 and possibly thereafter, AXA continued to receive deposits, and/or other revenue through annuity and life

---

[1] SARP stands for Sales Associate Retirement Program, which allows sales professionals working on commission, who normally do not have the opportunity to invest in 401(k)-style programs, to do so. (Am. Compl. ¶ 11).

2

insurance products marketed and sold by Mooney and other AXA representatives through the SARP mark." (Am. Compl. ¶ 18).

7. Mooney alleges that after he resigned from AXA, "AXA stopped paying any vested commissions and failed to pay shared commissions and other amounts due and owing to Mooney, including but not limited to monies payable to Mooney pursuant to the Trademark License Agreement, notwithstanding AXA's continued receipt of premiums and revenue derived from Mooney's efforts, client development and his intellectual property licensed by AXA." (Am. Compl. ¶ 23).

8. Given such allegations, through Interrogatories and Production Requests propounded to Defendants, Mooney sought to discover documents and information related to (i) AXA's revenues from SARP Sales, including but not limited to revenues received subsequent to Mooney's resignation in May, 2012, and (ii) commissions paid or payable as a result of SARP Sales, including but not limited to SARP Sales through agents other than Mooney.  Mooney served the AXA Defendants with his First Request for Production of Documents on or about April 19, 2014.  Pursuant to repeated informal requests for extensions of time, AXA did not serve Responses until July 16, 2014. ("AXA Responses," attached hereto as Exhibit C).

## A. DOCUMENT REQUESTS

9. Although AXA claims a privilege with respect to multiple requests, no privilege log or Local Civil Rule 26.2 information accompanied AXA's Responses, and no document claimed to be privileged was identified in any way. (See, Ex. C, ¶¶ 2-5, 8-14, 16-18, 20-33, 35-58, 62-73).  In addition, although AXA's counsel agreed in substance months ago to the terms of a tendered Confidentiality Agreement and Protective Order (Exhibit D), she declined to execute same, and instead has asserted a blanket claim of confidentiality with regard to every document produced by Defendants, regardless of how innocuous or lacking in sensitive or private

information any such document is.

10. AXA further claims that several requests are over-broad and/or seek irrelevant information. (Ex. C ¶¶ 27, 31, 39). However, these Requests seek evidence relevant to Mooney's claims and are reasonably calculated to lead to the discovery of admissible evidence. (See Am. Compl. General Allegations ¶¶ 13, 16, 18, 19, 23; Ct. VI, ¶¶ 1-3).

11. Further, although Mooney has produced documents showing that AXA had in excess of 30 SARP agents at the time of his resignation from AXA in May, 2012 (see Group Exhibit E, Bates-stamped MOON 321 – 328 and 312 – 320), AXA has produced no documents relating to shared commissions actually paid to such agents and Mooney, no revenue sharing agreements per the AXA's SARP Program, and no documents relating to commissions paid or payable to such SARP agents (other than Mooney) related to SARP Sales in the period 2006 through the present time. In its late Responses, AXA objected to producing any document with respect to shared revenue paid pursuant to the Trademark License Agreement through the present date. (See AXA Responses, ¶¶ 10, 25, 26, 27, 31, 33, 38 and 39).

12. Notwithstanding Defendants' broad-sweeping objections and non-production of documents, AXA has produced a 37 page document, captioned "14983 Matt Mooney Book of Business," Bates-stamped AXA 0000602 – 39, two representative pages of which (AXA 0000602, 621) are attached hereto as Exhibit F. Because AXA has claimed every document it has produced as "Confidential" (see ¶ 9 above), Exhibit F has been redacted to remove client full names and addresses. Significantly, the document shows that Mooney (Agent #14983) was "TERMED," i.e. terminated as the agent of record for the client, and a new agent, with a separate and distinct Agent number, put in his place by AXA following Mooney's resignation.

13. For example, Exhibit F shows that many of Mooney's clients were assigned to Agent No. 97935 after Mooney's termination. On information and belief, Agent No. 97935

4

pertains to the CRM ("Client Relationship Management") Manager in Cleveland, Ohio, who is in charge of managing "orphaned clients" and assigning them to other AXA agents following the termination, resignation or death of an AXA agent who had been serving the client. On information and belief, pursuant to AXA's CRM program, when new AXA products were sold through the CRM program, commissions on such sales are split between the new agent and AXA. Exhibit F shows that other of Mooney's clients were transferred by AXA to other agents for servicing and commissions.

14. Mooney alleges that such substitute agents are/have been receiving commissions to which he is entitled and vested, as well as monies payable to Mooney in consideration of the Trademark License. (Am. Compl. General Allegations ¶¶ 18-19, 23; Ct. VI, ¶ 2). Thus, documents related to who these clients are, who these agents are, and what such commissions are/have been are relevant to Mooney's breach of contract claims, and should be produced.

15. Further, many of the clients shown in Exhibit F were generated through SARP, and Mooney would therefore continue to be entitled to payments from any renewals or new investments from such clients per his contracts, including but not limited to the Trademark License Agreement. For example, AXA produced a list of SARP Annuitants as of December 31, 2007. (AXA 0000070 – 76 (Exhibit G, (redacted)). Exhibit G shows a T. Kasicki listed in conjunction with SARP Unit No. 806931 on the page Bates-stamped AXA 0000074. The same SARP Annuitant is shown in Exhibit F as having been reassigned from Mooney to other agents and the CRM Manager. (Ex. F, AXA 0000602). Similarly, one J. Engel is listed in conjunction with SARP Unit No. 796124 on the page in Exhibit G Bates stamped AXA 0000072, and is shown as having been derived from Mooney's Book of Business in Exhibit F, Bates stamped AXA 0000621. Such document shows that commissions regarding Engel and Kasicki are currently being paid to agents other than Mooney.

16. Thus, although AXA has produced documents showing that clients generated by Mooney, including through SARP units, were assigned to other AXA agents after Mooney's resignation, it has refused to produce any documents showing the nature and extent of commissions paid to such agents, or the sales upon which such commissions are based, to which Mooney was entitled to a 25% share thereof. (Am. Compl. ¶ 13). Without such documents, Mooney is unable to secure information necessary to the preparation of his case, including the full nature and extent of his damages.

17. Nor did AXA produce documents relative to the negotiation of the Trademark License Agreement (Request No. 9), documents related to monies payable to Mooney under the SARP Trademark License Agreement other than his own commission statements (Request No. 10), or documents which relate to monies generated by Defendants from Mooney's Book of Business at AXA after May, 2012. (Request Nos. 16, 17, 21, 22, 25, 52 – 56). Again, without such documents, Mooney cannot fully prepare his case or compute his damages.

18. AXA also objects to producing documents relating to "leads" that AXA provided its agents from Mooney's Book of Business after Mooney resigned. (Request Nos. 17, 43, 49, 52 – 55). Mooney seeks information relating to AXA's "CRM" and "CRU" programs through which AXA provides its agents with leads relating to a client in a former agent's Book of Business for servicing and sales opportunities. AXA objects to these requests based on lack of relevance, and states that the requests are overbroad, unduly burdensome, oppressive and vexatious. (Ex. C, ¶ 17). Such leads and current account information are relevant to determine commissions paid to such agent(s), which Mooney alleges should have been paid to him, in consideration for the SARP Trademark License. In addition, such documents may be relevant to his defamation claim. (See, Am. Compl. ¶¶ 13, 16, 18, 19, 23; Ct. III).

19. Due to AXA's failure to produce relevant documents, on September 16, 2014,

Mooney propounded a Second Set of Production Requests specifically requesting documents regarding SARP sales/commissions paid or payable to specific SARP Agents, and client statements regarding such SARP units. A copy of Mooney's Second Request for Production is attached hereto as Exhibit H. To date, AXA has produced no responsive documents, nor served a formal written response. Such responses were due October 16, 2014.

## B. INTERROGATORIES

20. Defendants also served Answers and objections to Mooney's First Set of Interrogatories, similarly late, on or about July 16, 2014. A copy of Defendants' Answers to Interrogatories is attached hereto as Exhibit I. In such answers and objections, Defendants failed to identify any person with knowledge of consideration paid by Defendants to Mooney for the SARP trademark license (Interrogatory No. 3), and failed to verify the Answers.

## C. RULE 37 CONFERENCE

21. The parties held a telephonic conference on October 6, 2014 in an effort to resolve the above discovery issues, AXA's non-production, and to avoid motion practice. Prior to such conference, in an attempt to make the conference more productive, I sent two detailed letters to Defendants' counsel setting forth deficiencies in Defendants' discovery responses and requesting compliance, including with respect to the requests that are the subject of this Motion. (See Group Exhibit J.) That telephone conference was not fruitful with respect to AXA's production of the above requested documents and information. Further, during that conference, counsel for the Defendants represented that relevant e-mails and perhaps, additional unidentified other documents omitted from Defendants' initial production and responses to Mooney's Second Set of Production Requests would be produced on or before October 31, 2014. Despite that representation, AXA has failed to produce any such documents.

22. On November 5, 2014 I had a further conversation with Defendants' counsel and

noted that there had been no supplemental disclosures and/or production on or before October 31st despite counsel's representations and inquired when I could expect same. Counsel stated that she was "still working on it" but reiterated that Defendants would not be producing documents showing commissions paid to substitute agents relating to Mooney's Book of Business subsequent to Mooney's resignation or to SARP agents other than Mooney relating to SARP Sales as requested by Mooney. I informed defense counsel at that time that I intended to file a Motion to Compel with respect to the outstanding discovery issues.

23. On November 6, 2014, I sent counsel for Defendants an email stating that I would defer filing a Motion to Compel until the close of business on November 13th and again requested her cooperation in supplementing Defendants' discovery responses. A copy of such email is attached as Exhibit K. To date, Defendants have made no supplementation.

24. On November 4, 2014, one of Defendants' counsel forwarded to me certain suggested changes to the Proposed Protective Order I had transmitted to Defendants' counsel in July, 2014. On November 6th, 10th and 12th, I forwarded to Defendants' counsel drafts of a revised Protective Order based upon their comments. A copy of the current draft is attached hereto as Exhibit L.

25. As a consequence of Defendants' continuing failure to produce documents and information, an Order compelling Defendants to comply with discovery is necessary and appropriate.  Plaintiff, Matthew Mooney, respectfully requests that this Court enter an Order directing Defendants to supplement their discovery responses including responses to his First Request for Production of Documents Nos. 9, 10, 16, 17, 21, 22, 25, 26, 27, 30, 31, 33, 38, 39, 42, 43, 49, 52, 53, 54, 55 and 56, and Second Request for Production of Documents, including but not limited to all requests relating to clients from Mooney's Book of Business being assigned to other agents through AXA's CRM Program after Mooney's resignation, and all commissions

paid through such program relating to such clients from May, 2012 through the present time, and to produce all responsive documents with respect to the above-referenced Requests. In addition, it is respectfully requested that the Court order Defendants to answer Interrogatory 3 and to verify their Answers under oath as required by FRCP 33(b)(3). Plaintiff further requests that the Court enter the draft Protective Order attached hereto as Exhibit L, as amended on November 12, 2014 which had been agreed to in substance by the parties since July, 2014, but which counsel for Defendants to date has declined to execute. Plaintiff further requests that, pursuant to FRCP 37(d)(3), the Court order Defendants to pay his attorneys fees and costs in conjunction with bringing this Motion necessitated by Defendants' failure to voluntarily comply with appropriate discovery requests, and their failure to timely supplement their responses.

## CERTIFICATION

Phillip J. Zisook, an attorney, pursuant to Federal Rule of Civil Procedure 37(d), and 28 U.S.C. 1746, declares under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| <u>November 14, 2014</u> | <u>/s/ Phillip J. Zisook</u> |
|---|---|
| Date | Phillip J. Zisook |

Phillip J. Zisook
Leon E. Farbman
Deutsch, Levy & Engel, Chartered
225 West Washington St. Suite 1700
Chicago, IL 60606
(312) 346-1460

James F. X. Hiler
Wechsler & Cohen, LLP
17 State Street, 15th Floor
New York, NY 10004
Tel. (212) 847-7900
Fax. (212) 847-7955
E-mail: jhiler@wechco.com