```
                   UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK


MATTHEW MOONEY,                    )  13-cv-03093
                                   )
          Plaintiff,               )
                                   )
     vs.                           )
                                   )
AXA ADVISORS, LLC, et al.,         )  Philadelphia, PA
                                   )  December 5, 2014
          Defendant                )  11:03 a.m.


                TRANSCRIPT OF TELEPHONIC CONFERENCE
              BEFORE THE HONORABLE MICHAEL M. BAYLSON
                  UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiff:       JAMES FX HILER, ESQUIRE
                         WECHSLER & COHEN, LLC
                         17 State Street
                         New York, New York  10004

                         LEON EDWARD FARBMAN, ESQUIRE
                         PHILLIP JAY ZISOOK, ESQUIRE
                         DEUTSCH, LEVY & ENGEL, CHARTERED
                         225 W. Washington Avenue
                         Suite 1700
                         Chicago, Illinois  60606

For the Defendants:      MIRANDA E. FRITZ, ESQUIRE
                         GABRIELLE Y. VASQUEZ, ESQUIRE
                         THOMPSON HINE, LLP
                         335 Madison Avenue
                         New York, New York  10017

Audio Operator:          JANICE LUTZ

Transcribed by:          DIANA DOMAN TRANSCRIBING, LLC
                         P.O. Box 129
                         Gibbsboro, New Jersey  08026-0129
                         Office:  (856) 435-7172
                         Fax:     (856) 435-7124
                         Email:   dianadoman@comcast.net
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

I N D E X

COMMENTS:                                           PAGE

By the Court                                        4, 8

By Ms. Fritz                                        4, 12

By Mr. Zisook                                       6, 11

1        (The following was heard in open court at 11:03 a.m.)
2            THE COURT:  Good morning.  Judge Baylson speaking.
3   Who is on the phone for the plaintiff?
4            MR. ZISOOK:  Good morning, Your Honor.  Phillip
5   Zisook for Matthew Mooney, and also with me is my colleague
6   Leon Farbman.
7            THE COURT:  All right, good morning.  And for the
8   defendant.
9            MS. FRITZ:  Miranda Fritz here, Your Honor.  With me
10  is Gabrielle Vazquez.  Good morning.
11           THE COURT:  Good morning.
12           MR. ZISOOK:  And Your Honor, also present is my
13  local counsel, James Hiler.
14           THE COURT:  Good morning.
15           MR. HILER:  Good morning, Your Honor.
16           THE COURT:  Good morning, good morning.
17           And I have with me my law clerk, and we're on the
18  record, so I'm making a record of this.  If you want to go off
19  the record for any reason, please tell me.
20           All right, good morning.  I've been reading the
21  documents here, and I have the agreed upon protective order
22  and I appreciate your coming to terms with that, and I'm going
23  to sign it.
24           And I believe, when I looked at this, there's no
25  provision in here that precludes -- that applies to any trial

Case 1:13-cv-03093-MMB   Document 53   Filed 02/06/15   Page 4 of 15

Colloquy                                                              4

1    or court hear.  That's correct?

2              MR. ZISOOK:  Yes, Judge.

3              THE COURT:  Okay.  So that will be signed and filed
4    today.

5              Now when I read the briefs, I got the impression
6    that this is sort of an evolving work in process, if I can
7    call it that, and you've been having a lot of discussions,
8    which is good.

9              So I -- and I noted in my order that if we can't
10   come to a resolution this morning over the telephone, and
11   either side would rather have a hearing in open court, I'm
12   prepared to do that sometime in the next two weeks, if either
13   one of you believed that something should be spelled out in a
14   courtroom, either come up to New York and we could have a
15   hearing there, or we can have another telephone conference if
16   you prefer that, if we don't resolve it today.

17             But I made a couple notes and just let me ask a
18   couple questions.

19             On the issue of privilege, has -- if either side is
20   claiming a privilege for any document, either one or thousands
21   -- hopefully not the latter -- the rule, in my view the rule
22   requires a privilege log.

23             So first let me ask the plaintiff.  Are you
24   withholding any documents on grounds of privilege?

25             MR. ZISOOK:  No, Judge.

1      THE COURT: All right. Okay, defendant, Ms. Fritz?

2      MS. FRITZ: Yes. We have, as we spelled out for
3  Your Honor, we are producing, just now putting together a
4  substantial package. There are documents that are going to be
5  withheld on privilege, and we do agree that we have an
6  obligation to provide a privilege log.

7      THE COURT: All right, when will the plaintiff get
8  the log?

9      MS. FRITZ: We can do that -- here's the problem.
10 Because of the fact that we are producing on his first and
11 second request for documents, and we are beginning his third
12 and fourth, we had not -- our intention was to do a privilege
13 log that would be more comprehensive as we wound up the
14 production.

15     So our view was that this is something that we would
16 be looking to do during January.

17     THE COURT: All right. Let me -- I'm not saying
18 that that's not a good idea. I'm just asking questions.

19     What is your schedule to produce -- when do you
20 think you will have completed your production of whatever
21 you're going to produce and advise the plaintiff what you're
22 objecting to, and also provide a log? I mean, what's a
23 reasonable date in January that all those things will have
24 been accomplished?

25     MS. FRITZ: January 30th.

1                THE COURT:  All right.  Now is that acceptable, to
2      the plaintiff, Mr. Zisook?
3                MR. ZISOOK:  Judge, the problem that I have and the
4      problem that I've had since July is I keep looking at the
5      scheduling order that the Court entered in August.
6                THE COURT:  Well, I'll extend the dates.  It's not
7      unusual that I do this.  I like to give counsel in every case
8      I have an opportunity to develop discovery and sometimes it
9      takes longer, when it gets going it takes longer than anybody
10     thought it was going to take at the beginning.
11               Now if you're telling me your client is prejudiced
12     by that, I'm happy to hear that.  But if there's no prejudice,
13     I'm prepared to extend the schedule.  I'd like to have one
14     more final schedule that everybody could keep, you know,
15     barring any acts of God or terrible tragedies.  Go ahead.
16               MR. ZISOOK:  And I agree with Your Honor.  If the
17     Court is flexible with the schedule, and production is going
18     to be made next week as counsel has represented in her papers,
19     I think we could probably work this out.
20               But again, I don't know what's going to be included
21     and what isn't going to be included in this production.  There
22     are things that I haven't -- that I raised specifically based
23     on what was included in the initial production in July.  It
24     may be that many of these problems are going to go by the
25     wayside with the follow-up production.

Case 1:13-cv-03093-MMB   Document 53   Filed 02/06/15   Page 7 of 15

Colloquy                                                              7

1                THE COURT:  Right.
2                MR. ZISOOK:  So really, with the production being
3    imminent, I don't know that there is a need for a hearing.
4    Although I think based on what I've read, there is going to be
5    one big issue that is going to impact many discovery requests,
6    and that is the difference between Ms. Fritz and myself as to
7    the bounds of discovery with respect to commissions and
8    compensation --
9                THE COURT:  You mean post termination?
10               MR. ZISOOK:  Yes, exactly.
11               THE COURT:  Well, I read about that in the briefs.
12   All right, is that the -- and I'm not -- I'm not going to rule
13   on that right now and I'm not foreclosing any more arguments
14   about it, but is that the major issue you see as discovery
15   moves forward?
16               MR. ZISOOK:  Yes.
17               THE COURT:  All right.
18               MS. FRITZ:  And from our side I think that -- again,
19   Mr. Zisook and I have had a lot of conversations, and I think
20   we're going to end up with perhaps one or two issues that
21   we're going to need the Court to take a look at, but I don't
22   know yet.  Because as you said, I still view this as very much
23   sort of a work in progress.
24               THE COURT:  Okay.  All right.  Well, that's okay
25   with me.

1          Now let me talk for a couple of minutes about
2    discovery.  I don't know any of you but I've you know, had a
3    lot of discovery experience as both a lawyer and a judge.
4          And this is my -- it happens to be my third
5    discovery conference this week on complicated cases such as
6    this.  So you'll forgive me if I just give you the little
7    spiel I have when I have these disputes.
8          I'm glad you're finally getting to talk and confer
9    with each other, which I think is essential.  I've written
10   some opinions about discovery where I like to use the metaphor
11   of a discovery fence, F-E-N-C-E.  And what I mean by that is
12   that after -- the parties and the judge, after you have the
13   exchange of discovery requests and you have some experience
14   from the pleadings and the nature of your discussions with
15   each other, you either agree on constructing a fence about
16   around the subject matter of the case that you think is proper
17   discovery.
18         And you know, I believe that if -- that when there
19   is a dispute, it's a wise thing for a judge to construct this
20   fence and describe what is inside the fence and what is
21   outside the fence.  And the fence needs to be flexible because
22   sometimes these things change during the course of discovery.
23         Now, I don't have -- I read from the briefs that
24   there is one, there appears to be one type, one program, if
25   I'm not mistaken, where the defendant agrees as to that

Case 1:13-cv-03093-MMB   Document 53   Filed 02/06/15   Page 9 of 15

Colloquy                                                           9

1    program the plaintiff is entitled to some revenues that the
2    defendant received after the plaintiff's termination.  Is that
3    called SARP, S-A-R-P, is that the name of it?
4              MR. ZISOOK:  That is the name of it, Judge.
5              THE COURT:  All right.
6              MR. HILER:  Yes, we do agree to that.
7              THE COURT:  Yes, okay.  So, that would like be a
8    bulge, that's what I call a bulge in the fence.  So if the
9    fence -- you know, this is an if, I'm not ruling -- if the
10   fence was generally confined to commissions that are due from
11   the plaintiff's work while he worked for the defendant, that
12   would be the fence, but there would be this bulge for the
13   SARP, S-A-R-P, program.
14             Now the plaintiff may say the bulge should be larger
15   than that.  I think the plaintiff does say that.  And he shows
16   certain conditions -- and he doesn't appear to say the
17   plaintiff is entitled to every -- to commissions on every
18   revenue the defendant received but only if he had some role in
19   it, or something like that.  And I haven't read all the
20   briefs, I haven't read all the cases that you cited -- I don't
21   have any opinion on that right now.
22             The -- and what I would like you to think about,
23   because I think if I have to rule on this down the road, this
24   would help me ruling, is whether the parties -- this would be
25   the plaintiff initially since you're making the request and

1  you have the burden of proof -- would identify, to the extent
2  the plaintiff knows, and the plaintiff may know this of his
3  own knowledge, he may know it from having spoken with other
4  friends or customers or former clients, et cetera.  If he
5  knows of certain of these transactions outside of the SARP
6  program that he believes he's entitled to a share of, then
7  plaintiff's counsel would make known those instances to the
8  defendant.
9         And then the defendant would respond to those
10 specifically.  Whether you agree, in which case they would be
11 part of the discovery, the fence would have an additional
12 bulge for those, and if you disagreed, why.
13        Then as the next step, the defendant may wish to
14 construct a listing of other things that you believe you want
15 from the plaintiff and the plaintiff hasn't responded, and the
16 plaintiff would respond to that list.
17        Another possibility would be for the plaintiff to in
18 addition to the SARP program and in addition to this initial
19 list of accounts that the plaintiff knows about, the plaintiff
20 would then describe conceptually what is the nature of the
21 transactions to which you believe you -- the plaintiff
22 believes he's entitled to, either by a time period, geographic
23 period.  I don't know enough about how the plaintiff did
24 business to be more specific.
25         But you would construct a request for documents that

1   was limited to these post termination sales, but giving the
2   defendant a very defined conceptual contention statement, so
3   to speak.
4            And then the defendant would respond to that in some
5   detail.  Either that they don't exist or if they do exist
6   there's only one or there may be a thousand, and whether the
7   defendant would be willing to provide any preliminary
8   discovery to, as to those the defendant believes that
9   discovery would not be proper, and the reason why.
10           And this would -- the reason I mention this dialogue
11  is first of all, I think it makes a lot of sense to both of
12  you to try and narrow the discovery, and it may help your
13  clients in advocating for this.  It may help for settlement
14  down the road, and that's another reason why it may make
15  sense.
16           And if I have to come and make a decision, having
17  this kind of dialogue ahead of time would be a great value to
18  me.  And I don't know how I would decide.  It would depend on
19  how much was presented.  And this is probably going to take a
20  couple of months for you to develop.  I don't want anybody to,
21  you know, lose family time over the holiday or the New Year's
22  to do this.  There's no rush as far as I'm concerned.
23           So I'm done talking.  So let me ask the plaintiff
24  any reaction you have at this time.
25           MR. ZISOOK:  Yes, Judge.  I think that that is a

1    constructive model.  Again, I was looking at the days of the
2    calendar and the clock ticking away without the documents, and
3    I think that this model will be constructive for there to be a
4    dialogue between the parties and to facilitate the flow of
5    information, and perhaps even get the other side, myself
6    included, to rethink its position on some of these things.
7            But I think that it is constructive and I am in
8    favor of proceeding.
9            THE COURT:  All right.  Ms. Fritz, what about you?
10           MS. FRITZ:  I agree.  Very practical, very
11   productive.  I'm all in favor.
12           THE COURT:  All right, good.  Okay.  Okay, well,
13   with that in mind, is there anything that either of you think
14   I have to decide right now, other than changing the scheduling
15   order?  Mr. Zisook?
16           MR. ZISOOK:  No, Judge.  I think that for the most
17   part, much will await what is coming next week.  And on the
18   big issues that Your Honor got right away, I think that the
19   model that you set up is a good one and we can work with it.
20           THE COURT:  All right.  Okay, do either of you see
21   any need to have a court hearing in New York in the next two
22   weeks?  Mr. Zisook?
23           MR. ZISOOK:  No, Judge.
24           THE COURT:  All right.  Ms. Fritz?
25           MS. FRITZ:  No, Your Honor.

1                THE COURT:  All right.  Now, I would suggest rather
2     than change the scheduling order today, you have my word that
3     I'll change it.  I think it would be better if you go through
4     this production that's going to take place by the end of
5     January.  The present schedule shows written discovery and
6     depositions concluding by March 30th.
7                So if we address the rescheduling at the end of
8     January, that may be more productive than doing it right now.
9     Am I correct about that, plaintiff?
10               MR. ZISOOK:  I think, Judge.
11               THE COURT:  All right.  Okay, Ms. Fritz, is that all
12    right with you?
13               MS. FRITZ:  Yes, it is.
14               THE COURT:  All right.  Well, once again, why don't
15    you do this.  I am probably going to be involved in a major
16    criminal trial the whole month of January, so I'll be here,
17    but if anything comes up, you can send me a letter if you need
18    to confer.  And then I would like you to let me know by the
19    end of January, either you can send -- if you agreed on the
20    new scheduling order, you can just send in the proposal in the
21    same format that the prior one is.  And if you disagree, you
22    can each send your own schedule and I'll probably have a phone
23    call to resolve it.
24               Is that okay?
25               MR. ZISOOK:  Thank you.

1    THE COURT: I'm going to write on my copy of the
2 order, I'm going to say to be revised by 1/30/15.
3    MS. FRITZ: Thank you very much, Judge, and happy
4 holidays to you.
5    THE COURT: Yes, thank you for calling in. Happy
6 holidays to you.
7    MR. ZISOOK: Happy holidays. Thank you very much,
8 Judge.
9    THE COURT: Right, bye now.
10    (Proceeding concluded at 12:20 p.m.)
11                          * * * *

1  **C E R T I F I C A T I O N**

3       I, Sandra Carbonaro, court approved transcriber,
4  certify that the foregoing is a correct transcript from the
5  official electronic sound recording of the proceedings in the
6  above-entitled matter.

11  _____
12  SANDRA CARBONARO

14  <u>Diana Doman Transcribing, LLC</u>                    _____
15  AGENCY                                                    DATE